UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GOAD COMPANY, a Missouri,               )
Corporation                              )
                                         )
            Plaintiff,                    )
                                         )
vs.                                      )        No:  14-545
                                         )
HONEYWELL INTERNATIONAL, INC., a         )
Delaware Corporation,                     )
                                         )
            Defendant.                    )        JURY TRIAL DEMANDED
                                         )
                                         )

## COMPLAINT FOR DAMAGES AND OTHER RELIEF

Plaintiff GOAD Company ("GOAD"), for its causes of action against Defendant

Honeywell International, Inc. ("Honeywell" or "Defendant"), states:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff GOAD is a corporation organized and existing under the laws of the

State of Missouri, with its principal place of business in Kansas City, Missouri.

2.      Upon information and belief, Defendant Honeywell is a corporation organized

and existing under the laws of the State of Delaware, with its principal place of business in

Morristown, New Jersey.  Honeywell has offices multiple offices for the regular conduct of its

business, including locations Kansas City, Columbia, Nevada, and St. Louis, Missouri.

Honeywell is registered to do business in the State of Missouri, and its designated agent for

service of process is CSC Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson

City, Missouri 65101.

3.      Personal Jurisdiction in this Court is proper over Defendant Honeywell, in that Honeywell regularly conducts business in Missouri, has multiple offices in Missouri for the conduct of its business, is registered to do business in Missouri, maintains a Missouri registered agent, made a contract in this state which is a subject of this lawsuit, and made representations to GOAD in Missouri.

4.      There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

5.      A substantial part of the events giving rise to the causes of action alleged, and the injury to GOAD, occurred in this district and the Defendant is subject to personal jurisdiction in this district.  Accordingly, venue is proper pursuant to 28 U.S.C. § 1391 (b) (2) & (3).

## GENERAL ALLEGATIONS

6.      GOAD is a leading provider of plating process systems and lined process tanks, as well as providing contracting and other services with respect to the provision and installation of process tank lines for plating and surface finishing operations. GOAD provides "turn-key" systems with services from demolition of old lines through start-up and training of new lines.

7.      GOAD has, as process plating contractor, successfully obtained and performed multiple projects, including multiple projects at U.S. military bases.  In its role as process plating contractor, GOAD was responsible both for its own performance, as well as locating, directing, and coordinating the work of multiple GOAD subcontractors.

8.      In 2012, Honeywell attempted to bid for an Energy Improvement Project at Rock Island Arsenal, Illinois (the "Rock Island Project").  Honeywell bid to become the designated Energy Service Company ("ESCO") for the Rock Island Project.

2

9.     The Rock Island Project included a substantial process plating component.

10.     The Army's Request for Proposal ("RFP") for the Rock Island Project stressed the importance of past experience and success with the various Project components.  Among other things, the RFP requested:

a.     Subcontracting Letter(s) of Commitment;

b.     Details of up to five exemplar projects "which demonstrate the ESCO's and/or its partner's/team member's experience in performing work that is similar in scope, magnitude and complexity…";

c.     "Specific information to demonstrate that [the ESCO] or its partner/team member has relevant experience…"; and

d.     "the planned approach to successfully complete the project if a teaming or subcontracting agreement will be used for the project."

11.     Honeywell, however, had no experience in process plating, and thus required a partner/team member with relevant and positive process plating experience in order to increase its chances to win the Rock Island Project RFP.

12.     Realizing that it required a partner experienced in process plating, both to plan, develop the budget, specify equipment, locate subcontractors, schedule, coordinate and perform the Project's process plating component, and to bring the required experience to the project as required by the RFP, Honeywell approached GOAD and requested that GOAD team with Honeywell on the Rock Island Project.

13.     In fact, Honeywell acknowledged the importance of GOAD's past performance experience to Honeywell's effort to obtain the Rock Island Project:  "we're looking to capture your experience with plating experience…similar to the operations at Rock Island.  Actual experience at Rock Island is very valuable, experience with the Army and DoD is also valuable."

14.     GOAD initially demurred  Honeywell's overtures and told Honeywell GOAD would not work for free, citing the substantial time and investment GOAD would incur in order

3

to arrange the necessary estimates, time schedules, subcontractor commitments and other components of a well-executed process plating project.

15.     Honeywell, however, persisted in its pursuit of GOAD.  In the end, Honeywell convinced GOAD to team with Honeywell by promising GOAD three things: (1) if Honeywell was selected for the Rock Island Project, GOAD would be the designated process plating subcontractor on the Rock Island Project; (2) GOAD would become Honeywell's teaming partner on future U.S. military work (meaning that GOAD would continue to oversee and perform the process plating component of projects); and (3) that GOAD's price on the Rock Island Project, as quoted to Honeywell, would not be subject to later competitive bidding, but would instead be accepted by Honeywell so long as it was "fair and reasonable."

16.     On the basis of Honeywell's promises, and in reliance on them, GOAD undertook the work of putting together the schedules, budgets, forecasts, subcontracts and other components for a successful process plating project.  In all, GOAD spent several months, and hundreds of thousands of dollars, putting the plating process project together.

17.     Consistent with its promise to GOAD, and as required by the RFP, Honeywell submitted to GOAD a letter, dated August 15, 2012, addressed to Ms. Barb Osterkamp, U.S. Army Engineering and Support Center, and referring to the Rock Island Project.  Honeywell said it was writing to "confirm that Honeywell International has been collaborating with GOAD Company in developing the accompanying response to the referenced solicitation.  As defined in the RFP, GOAD Company will serve as our subcontractor supporting plating process improvements."

18.     Honeywell sent a copy of this August 15, 2012 letter to GOAD, and requested GOAD's signature on the letter.  In the cover email to this letter, Honeywell told GOAD, "in

4

order to include your experience in our [RFP] response, we need to demonstrate that Honeywell and GOAD intend to work together, if selected. (The government is trying to avoid a bait-and-switch)."

19. In late 2012, Honeywell was awarded the "Right to Bid" the Rock Island Project. As the "Right to Bid" constituted the government's selection of a single ESCO, Honeywell's receipt of the "Right to Bid" was, in essence, the award of the Rock Island Project to Honeywell.

20. Thereafter, Honeywell continued to call upon GOAD to perform the work of a process plating subcontractor, including continued budgeting, scheduling, technical and other planning and preparation work.

21. Honeywell, in fact, acknowledged GOAD's important contribution to Honeywell's effort to secure the Rock Island Project: "The plating project is the anchor to our overall program with JMTC. We are in a great position, and couldn't have reached this point without you."

22. Honeywell was awarded the Task Orders for the Rock Island Project on December 26, 2013 in the amount of $61 million, including $31 million for the project on which Honeywell had promised to use GOAD.

23. Shortly thereafter, GOAD, for the first time, learned that Honeywell no longer intended to use GOAD in the agreed-upon role as, in Honeywell's own words to the government, "subcontractor supporting plating process improvements." Rather, Honeywell purported to relegate GOAD to the status of potential bidder on certain small and discrete portions of the Rock Island Project.

24.     Around this time, Honeywell also made it clear to GOAD that Honeywell did not intend to team with GOAD on other government projects, nor did Honeywell intend to utilize GOAD as the plating process subcontractor on such other work.

25.     Honeywell has further failed to engage GOAD as plating process subcontractor on an additional project at Letterkenny Army Depot, despite Honeywell's agreement to team with GOAD on future U.S. Military work.

26.     In short, Honeywell engaged in the very "bait-and-switch" it had disavowed in its August, 2012 letter to the Army. Honeywell "baited" GOAD into performing substantial and costly preparatory work, and baited GOAD into lending its good name, experience, and credentials to Honeywell's RFP, only to "switch" GOAD to the role of a possible sub-sub-contractor on pieces of the plating project after Honeywell had obtained the Rock Island Project and obtained GOAD's work product.

27.     Ironically, despite denying GOAD its promised role as plating process subcontractor, Honeywell continued to use, and upon information and belief is still using, GOAD's work product, including schedules GOAD prepared for the plating process work GOAD was to oversee.

28.     GOAD has satisfied all conditions precedent, if any, to its right to enforce its agreements with Honeywell or sue for the breach of those agreements.

## COUNT I - BREACH OF CONTRACT

29.     The allegations stated in Paragraphs 1 through 28 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

30.     Honeywell and GOAD had an agreement that GOAD would provide its name, reputation, experience, and the preparatory work for the Rock Island Project, and Honeywell

6

agreed that: (1) if Honeywell was selected for the Rock Island Project, GOAD would be the designated process plating subcontractor on the Rock Island Project; (2) GOAD would become Honeywell's teaming partner on future U.S. military work (meaning that GOAD would continue to oversee and perform the process plating component of projects); and (3) that GOAD's price on the Rock Island Project, as quoted to Honeywell, would not be subject to later competitive bidding, but would instead be accepted by Honeywell so long as it was "fair and reasonable.

31.     GOAD has performed all of its obligations and satisfied all conditions precedent to its right to seek relief for Honeywell's multiple breaches of the parties' agreement, or is excused from performance of any obligations by virtue of Honeywell's prior material breaches.

32.     Honeywell materially breached the parties' agreement, in numerous ways, by:

        a.      Refusing to honor its commitment to use GOAD as the process plating subcontractor on the Rock Island Project;

        b.      Refusing to honor its commitment to team with GOAD (as process plating subcontractor) on future U.S. military work, including Letterkenny Army Depot; and

        c.      Refusing to accept GOAD's price for the process plating subcontractor work with respect to the Rock Island Project.

33.     Honeywell's material breaches of the parties' agreement caused substantial financial harm to GOAD and imposed significant damages, in an amount to be proven at trial in excess of Two Million Dollars ($2,000,000).

## COUNT II – QUANTUM MERIUT

34.     The allegations stated in Paragraphs 1 through 28 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

35.     GOAD furnished valuable goods and services to Honeywell in the form of allowing Honeywell to use GOAD's name, reputation and experience in Honeywell's RFP response on the Rock Island Project, and in providing Honeywell with significant preparatory

work on the process plating component of that work, including budgets, technical information and analysis, and schedules.

36.     GOAD furnished these goods and services to Honeywell with the expectation, recognized, induced, confirmed, and agreed-to by Honeywell, that GOAD would be compensated for these goods and services.

37.     Honeywell accepted these goods and services provided by GOAD, and has benefited from the receipt and use of these goods and services.

38.     Honeywell has not paid GOAD for the reasonable value of these goods and services.

39.     Honeywell cannot in equity and good conscience, retain the value of these goods and services without compensating GOAD.

40.     As a direct and proximate result of Honeywell's failure to compensate GOAD, GOAD has been damaged, and Honeywell should be required to pay GOAD the reasonable value of the goods and services.

## COUNT III – PROMISSORY ESTOPPEL

41.     The allegations stated in Paragraphs 1 through 28 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

42.     Honeywell promised GOAD that, if GOAD allowed Honeywell to use GOAD's name, reputation, experience, and if GOAD did substantial preparatory work for the Rock Island Project, the Honeywell would: (1) if Honeywell was selected for the Rock Island Project, designate GOAD as the process plating subcontractor on the Rock Island Project; (2) include GOAD as Honeywell's teaming partner on future U.S. military work (meaning that GOAD would continue to oversee and perform the process plating component of projects); and (3)

8

accept GOAD's price on the Rock Island Project, as quoted to Honeywell, and not subject that price to competitive bidding, but instead that price so long as it was "fair and reasonable.

43.     GOAD, in reliance on Honeywell's promise, allowed its name, experience and reputation to be used by Honeywell, and engaged in substantial preparatory work for the Rock Island Project.

44.     Honeywell expected and understood that GOAD would rely upon Honeywell's promise in the manner in which GOAD, in fact, did rely on that promise.

45.     Injustice can only be avoided by enforcing Honeywell's promise, and awarding damages to GOAD.

## COUNT IV – UNJUST ENRICHMENT

46.     The allegations stated in Paragraphs 1 through 28 of this Complaint are incorporated by reference herein with the same force and effect as if set forth fully below.

47.     GOAD conferred a substantial benefit upon Honeywell by allowing Honeywell to use GOAD's name, reputation, experience, and by doing substantial preparatory work for the Rock Island Project.

48.     Honeywell derived substantial benefits from the use of GOAD's name, reputation, experience and preparatory work, including being able to procure the Rock Island Project and thereafter use GOAD's work to assist in planning and implementing the Project.

49.     It would be unjust for Honeywell to retain these substantial benefits without paying GOAD for same.

50.     Should it be determined that GOAD did not have an enforceable agreement Honeywell, then GOAD lacks an adequate remedy at law to provide redress to GOAD.

51.     Honeywell should be required to pay GOAD the reasonable value of the goods and services provided by GOAD.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff GOAD Company requests the Court to enter judgment in its favor and award relief against Defendant as follows:

a.     Actual Damages in a fair and reasonable amount, believed to be in excess of $2,000,000;

b.     An award to GOAD for the fair and reasonable value of its services and goods provided to Defendant;

c.     Plaintiff's costs herein incurred; and

d.     Such other and further relief as may be warranted.

Plaintiff demands Trial By Jury on all claims triable to a jury.

ARMSTRONG TEASDALE LLP

BY: /s/ Laurence R. Tucker_____
    Laurence R. Tucker
    William C. Corrigan (*pro hac vice pending*)
    Daniel C. Nelson (*pro hac vice pending*)
    2345 Grand Blvd
    Kansas City, MO 64108
    (816) 221-3420
    (816) 221-0786 (facsimile)
    lrtucker@armstrongteasdale.com
    wcorrigan@armstongteasdale.com
    dnelson@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF
GOAD COMPANY